UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PEOPLE FOR THE ETHICAL TREATMENT )
OF ANIMALS, INC., )
1536 16th Street, N.W. )
Washington, D.C. 20036, )
 )
DELCIANNA J. WINDERS, )
11155 NE Halsey St., Suite A )
Portland, OR 97220 )
 )
PHYSICIANS COMMITTEE FOR )
RESPONSIBLE MEDICINE, )
5100 Wisconsin Avenue, NW, Suite 400, )
Washington, D.C. 20016, )
 )
and )
 )           Civil Action No. 1:18-cv-00887-CRC
RESCUE AND FREEDOM PROJECT, )
4804 Laurel Canyon Blvd. )
Valley Village, CA 91607, )
 )
          Plaintiffs, )
 )
v. )
 )
SONNY PERDUE, Secretary, )
UNITED STATES DEPARTMENT OF )
AGRICULTURE )
1400 Independence Ave., S.W. )
Washington, D.C. 20250, )
 )
UNITED STATES DEPARTMENT OF )
AGRICULTURE )
1400 Independence Ave., S.W. )
Washington, D.C. 20250, )
 )
and )
 )
ANIMAL AND PLANT HEALTH )
INSPECTION SERVICE )
4700 River Road )
Riverdale, MD 20737 )

```
                                          )
        Defendants.                        )
                                           )
_____)
```

## SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, as amended, to compel the United States Department of Agriculture ("USDA") to release

to Plaintiffs and affirmatively  disclose to the public records and categories of records that the

agency for years posted in the Electronic Reading Room of its Animal and Plant Health

Inspection Service ("APHIS") pursuant to FOIA's 1996 electronic records requirements ("E-

FOIA Amendments"), *id.* § 552(a)(2), but which since February 2017 the USDA has failed to

affirmatively disclose. This action also challenges the USDA's failure to disclose much of the

information that the agency had previously routinely disclosed in its Electronic Reading Room

but has now redacted from records that the agency "re-posted" there after Plaintiffs filed an

initial action regarding these matters, *PETA et al. v. United States Department of Agriculture*,

Civ. No. 17-296 (D.D.C. 2017).

2.     The records and information that have been withheld from Plaintiffs and the

public—including names, locations, and license numbers of entities regulated under the Animal

Welfare Act ("AWA"), 7 U.S.C. §§ 2131–2159; inventories of animals in the possession of such

entities, which accompany all USDA inspection reports; certain information required to be

included in the annual reports by research facilities; and enforcement records—are heavily relied

on by Plaintiffs and other animal protection groups, research advocacy organizations, reporters,

state and local governments, scholars, consumers, and others to monitor and keep the public

informed about the USDA's implementation and enforcement (and lack thereof) of the AWA.

Plaintiffs and others have also relied on such records to advocate for protection of animals used

for research, exhibition, and the pet trade, and to petition the USDA to more diligently enforce

the AWA, to promulgate standards for animal protection, and to formulate and institute policies

and practices that will advance the protection of these animals.

3.      The USDA's failure to affirmatively disclose these records and information

violates FOIA, and severely hinders Plaintiffs' ability to carry out these activities, and to keep

the public informed about these matters and whether and to what extent the USDA is carrying

out its responsibilities under the AWA and the agency's own implementing regulations.

4.      Since February 3, 2017, Defendants have engaged in an unlawful pattern and

practice by failing to disclose this information in violation of the affirmative disclosure

requirements of FOIA.

5.      In violation of Section 3 of the FOIA Improvement Act of 2016, the USDA has

also failed to issue regulations implementing its duty to affirmatively disclose records that have

been released under FOIA and that have been requested three or more times. Pursuant to Section

3 of the FOIA Improvement Act of 2016, those regulations were required to be promulgated no

later than December 27, 2016. The USDA's failure to abide by this mandate violates FOIA and

constitutes agency action that has been unlawfully withheld and unreasonably delayed within the

meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1).

6.      In response to Plaintiffs' request that the USDA affirmatively disclose the

information at issue, Defendants have taken the position that there is no way a member of the

public may request the agency to affirmatively disclose records pursuant to the affirmative

disclosure requirements of FOIA, 5 U.S.C. §552(a)(2). Defendants' position, practice, and policy

regarding this matter also violates FOIA and is arbitrary and capricious and an abuse of

discretion within the meaning of the APA, 5 U.S.C. § 706(2).

**JURISDICTION**

7.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 706, and 28 U.S.C. § 1331.

**PARTIES**

8.      Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA") is a Virginia non-stock corporation and an animal protection charity pursuant to Section 501(c)(3) of the Internal Revenue Code. It has relied heavily for many years on the records and information at issue to monitor and inform the public about the USDA's inadequate enforcement of the AWA and to carry out its mission to protect animals from cruel and neglectful treatment, and plans to continue to rely on such information in the future for such purposes.

9.      PETA brings this case on its own behalf and on behalf of its more than 6.5 million members and supporters who also rely on the agency's affirmative disclosures to monitor, study, become educated about, and advocate for the protection of animals maintained by entities regulated by the USDA, and who also use such information to monitor how the USDA is carrying out (or failing to carry out) its AWA responsibilities to protect these animals.

10.      PETA's charitable animal protection and advocacy work, and the interests of its members articulated in paragraphs 8-9, are injured by Defendants' actions, which deprive PETA and its members of important information about the implementation of, and compliance with, the AWA. These injuries will be redressed if PETA prevails in this action and, as a result, the USDA is required to affirmatively disclose the records and information at issue without requiring PETA and its members to submit individual requests for such information pursuant to FOIA.

11.      Plaintiff Delcianna Winders is currently Vice President and Deputy General Counsel of the PETA Foundation and the immediate past academic Animal Law & Policy

Fellow at Harvard Law School—a position she held from August 2015 to June 2017. She also recently completed a position as a Visiting Scholar at the Elisabeth Haub School of Law at Pace University and teaches Animal Welfare Law at Vermont Law School, and has been approached by numerous other law schools about teaching animal law, including the requirements and implementation of the AWA. Ms. Winders also worked for the PETA Foundation as an attorney for several years before undertaking her fellowship at Harvard Law School. In her capacity as a scholar, her primary responsibilities include conducting research on, writing and teaching about, and disseminating information to the public and the media about, the Animal Welfare Act, compliance and non-compliance with that statute, and the USDA's implementation and enforcement (or lack thereof) of the AWA and the agency's implementing regulations. To carry out her work, Ms. Winders relies extensively on the records and information that the USDA previously routinely made electronically available on APHIS's website, but that the agency has now withheld from her and the public. She intends to continue researching, writing, and lecturing about the AWA now and in the future as part of her professional career and personal interests, and to continue to rely on such records. Over the past few years, Ms. Winders has been researching and drafting two law review articles concerning the USDA's implementation of the AWA—articles that rely heavily on the information that APHIS is failing to affirmatively disclose. These articles have been published in top-fifty law reviews. Ms. Winders also frequently gives lectures on the AWA that rely on this information. For example, she has recently given talks on the subject at the American Association of Law Schools Annual Meeting, Columbia Law School, Harvard Law School, Lewis & Clark Law School, New York University School of Law, The Sturm College of Law of University of Denver, Tulane University Law School, and numerous other venues. Ms. Winders also teaches her students about the AWA. In

addition to her academic work, Ms. Winders has had numerous pieces published in the popular

media regarding the USDA's implementation and enforcement of the AWA, including in the

*Arizona Daily Star*, *The Chronicle of Higher Education*, *Courier Journal*, *Des Moines Register*,

*The Hill*, *Nature*, *Newsweek*, *Salon*, *U.S.A. Today*, *The Wall Street Journal*, and other popular

media outlets. Defendants' failure to affirmatively disclose the records and information at issue

hinders Ms. Winders' ability to complete her research, to publish work she has already

completed, to prepare articles and other publications for the media, and to give talks.

12.     In her present capacity as Vice President and Deputy General Counsel of the

PETA Foundation, Ms. Winders continues to rely on the records and information that the USDA

routinely affirmatively disclosed on its website but now fails to so disclose, and she needs the

other information and records at issue in this case to carry out her responsibilities to protect

captive animals from abuse, neglect, and other forms of mistreatment, and to educate the public

about such matters and the USDA's failure to adequately enforce the AWA.

13.     Ms. Winders' present work, as well as her future work and interests in these

issues, are harmed by Defendants' actions, which deprive her of the information and records she

needs for such work. These injuries will be redressed if she prevails in this action and the records

and information at issue are immediately and prospectively disclosed to her and to the public

without requiring her to submit individual requests for such information pursuant to FOIA.

14.     Plaintiff Physicians Committee for Responsible Medicine ("Physicians

Committee") is a non-profit public health organization that advocates for, and educates, the

general public about health issues, with a focus on advocating for alternatives to the use of

animals in medical education, research, and testing, and advocating for more effective scientific

methods. Physicians Committee relies on the records and information at issue in this case to

carry out its research and advocacy efforts, and will continue to do so in the future. For example, for more than a decade, Physicians Committee has regularly submitted to APHIS complaints regarding potential violations of the AWA by research facilities. Physicians Committee then relied on the records and information that the USDA routinely affirmatively disclosed on its website but now fails to so disclose to determine, without being subjected to the delay typically associated with individual FOIA requests, the outcome of any such complaint. In particular, Physicians Committee relied on non-redacted inspection reports to determine whether USDA inspected the proper research facility location in response to a complaint and the inventories of animals that accompanied those inspection reports to determine the thoroughness of any such inspection. Prompt access to such records and information is of significant concern to Physicians Committee and its members, especially in light of the fact that the USDA recently changed its policy so as to announce its inspections in advance.. Physicians Committee also brings this case on behalf of its more than 175,000 members, many of whom also rely on FOIA's affirmative disclosure requirements to monitor, study, and become educated about the treatment of animals at research facilities regulated under the AWA, as well as whether the USDA is complying with its animal protection obligations under that statute. Physician Committee's interests and those of its members are harmed by Defendants' actions, which deprive them of the information they need to carry out their activities. These harms will be redressed if Plaintiffs prevail in this action and the USDA is compelled to affirmatively disclose the information and records at issue without requiring Physicians Committee or its members to submit individual requests for such information pursuant to FOIA.

15.     Plaintiff Rescue and Freedom Project is a non-profit organization dedicated to rescuing and placing for adoption dogs and cats that have been used in research. It has frequently

used the information that was previously posted on APHIS's website to monitor USDA's compliance with the AWA and to identify which research facilities use animals, particularly dogs and cats, and in what quantity, to advocate for the protection and release of such animals, and to invite such facilities to learn more about post-research adoption policies, procedures, and opportunities offered by the Project. The Project's work is harmed by Defendants' actions which now deprive the Project of timely access to information and records that it needs for this work. This harm will be redressed if Plaintiffs prevail in this action and the USDA is compelled to affirmatively disclose the information and records at issue without requiring the Project to submit individual requests for such information pursuant to FOIA.

16.     All of the Plaintiffs are also harmed by the USDA's failure to promulgate regulations implementing the duties imposed on them by the FOIA Improvement Act of 2016, including regulations for procedures regarding the disclosure of records that have been released and requested three or more times. *See* 5 U.S.C. § 552(a)(2); Section 3, FOIA Improvement Act of 2016, Pub. Law 114-185 (June 30, 2016). Without such implementing regulations in place, it has been difficult for the Plaintiffs and their members to ascertain which records the USDA itself believes it is required to affirmatively disclose as records frequently requested by FOIA requesters, and to know what, if any, procedure they should follow to ascertain such records and ensure that the agency is affirmatively disclosing them as required by FOIA. These injuries will be remedied if Plaintiffs prevail in this action and Defendants are required to promulgate the requisite implementing regulations.

17.     All of the Plaintiffs are also injured by USDA's refusal to process their requests that the agency affirmatively disclose certain categories of information, as this means the only way they can obtain access to such information is by submitting individual FOIA requests

pursuant to 5 U.S.C. § 552(b)(3) and enduring months, if not years, of delay in obtaining a substantive response from the agency.

18.     Defendant Sonny Perdue is the Secretary of the United States Department of Agriculture. As the "head of the agency," he is required by the FOIA Improvement Act of 2016 to issue regulations implementing those amendments, but has failed to carry out this mandatory obligation. Accordingly, he has violated this mandatory duty in violation of FOIA, and unlawfully withheld and unreasonably delayed actions required by law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1).

19.     Defendant USDA is an agency of the federal government and has possession and control of the records and information at issue in this case. It is responsible for implementing the Animal Welfare Act and the affirmative disclosure requirements of FOIA, including the obligation to make certain records available to the public through electronic means. It has withheld the information and records at issue in this case, and has also violated its mandatory duty to issue regulations implementing the requirements of Section 3 of the FOIA Improvement Act of 2016.

20.     Defendant APHIS is a division of the USDA which administers the AWA. As such, it also has possession and control of the records at issue here, and is responsible for implementing the affirmative disclosure requirements of FOIA, including the obligation to make certain records available to the public through electronic means. It has withheld the information and records at issue in this case, and has also violated its mandatory duty to issue regulations implementing the requirements of Section 3 of the FOIA Improvement Act of 2016.

## FACTS GIVING RISE TO PLAINTIFFS' CLAIMS FOR RELIEF

### A.    The Animal Welfare Act

21.    Congress enacted the AWA in 1966 in response to "the shocking failure of self-policing by the medical community" to ensure the humane treatment of animals used in medical research. 112 Cong. Rec. 13256 (1966). Congress amended the statute in 1970 to extend its protections to animals used in exhibitions and the wholesale pet trade. Pub. L. No. 91-579, 84 Stat. 1560 (1970); 7 U.S.C. § 2131(1).

22.    As stated in the statute's Statement of Policy, the AWA's primary purposes are to (1) "insure that animals intended for use in research facilities or for exhibition purposes of for use as pets are provided humane care and treatment"; and (2) "assure the humane treatment of animals during transportation in commerce." 7 U.S.C. § 2131. Additionally, the Statement of Policy explains that "Congress further finds that it is essential to regulate . . . the transportation, purchase, sale, housing, care, handling, and treatment of animals by carriers or by persons or organizations engaged in using them for research or experimental purposes or for exhibition purposes or holding them for sale as pets or for any such purpose or use." *Id.*

23.    To achieve its important remedial purposes—i.e., the protection of animals—the AWA requires the USDA to "promulgate standards" governing "the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors," which "shall include minimum requirements" for "handling, housing, feeding, watering, sanitation, ventilation, shelter from extremes of weather and temperatures, [and] adequate veterinary care." 7 U.S.C. § 2143(a). Those standards must also include requirements for "exercise of dogs," and "for a physical environment adequate to promote the psychological well-being of primates." *Id.* § 2143(a)(2)(B). As to animals used in research facilities, the standards must include requirements

"for animal care, treatment, and practices in experimental procedures to ensure that animal pain and distress are minimized," *id.* § 2143(a)(3)(A), and for research facilities filing reports with the USDA at least annually indicating that the AWA is being followed "and that professionally acceptable standards governing the care, treatment, and use of animals are being followed . . . during actual research or experimentation," *id.* § 2143(a)(7)(A). In complying with this reporting requirement, research facilities must provide "information on procedures likely to produce pain or distress in any animal and assurances demonstrating that the principal investigator considered alternatives to those procedures," and "an explanation for any deviation from the standards." *Id.* § 2143(a)(7)(B)(i), (iii); *see also* 9 C.F.R. § 2.36(b) (requiring annual reports to include, *inter alia*: a summary of all exceptions to the AWA standards and regulations, including "a brief explanation of the exceptions, as well as the species and number of animals affected," "the common names and the numbers of animals upon which teaching, experiments, research, surgery, or tests were conducted involving accompanying pain or distress to the animals and for which the use of appropriate anesthetic, analgesic, or tranquilizing drugs would have adversely affected the procedures, results, or interpretation of the teaching, research, experiments, surgery, or tests," and "[a]n explanation of the procedures producing pain or distress in these animals and the reasons such drugs were not used."

24.     To carry out the purposes of the statute, the USDA issues registrations to research facilities, intermediate handlers, and carriers, and issues licenses to all other entities subject to the Act if they can demonstrate that they are in compliance with all applicable standards; conducts periodic inspections of regulated entities to determine whether they are in compliance with such standards; and requires the submission of various records, including, but not limited to,

annual reports from research facilities that contain information about the number and treatment of statutorily protected animals.

25.     The USDA, and particularly APHIS, have been repeatedly criticized over the years by the USDA's own Office of Inspector General for failing to effectively enforce the requirements of the AWA.

26.     The vast majority of all AWA enforcement actions are accomplished through official warnings to regulated entities issued by APHIS. When APHIS issues an official warning, or enters a settlement agreement, it closes out the underlying investigation and the enforcement process is completed.

**B.      Requirements of FOIA**

27.     FOIA contains affirmative disclosure requirements that require federal agencies to provide certain records to the public as a whole, as well as provisions requiring agencies to disclose any other records to individuals in response to FOIA requests.

28.     Under FOIA's affirmative disclosure requirements, all agencies  shall make available for public inspection in an electronic format" certain records, including (1) "final opinions . . . as well as orders, made in the adjudication of cases"; and (2) copies of all records, regardless of form or format, which have been released to any person under the Act and which, "because of the nature of the subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records." 5 U.S.C. § 552(a)(2).

29.     The USDA's regulations implementing FOIA, issued in 2000, provide that in determining whether records must be affirmatively disclosed under FOIA because they "have become or are likely to become the subject of subsequent requests for substantially the same

records," the agency will consider the following factors: (1) previous experience with similar records; (2) the particular characteristics of the records involved, including their nature and the type of information contained in them; and (3) the identity and number of requesters and whether there is widespread media, historical, academic, or commercial interest in the records. 7 C.F.R. § 1.4.

30.     Since Congress amended FOIA in 1996, the statute has required the agency to make all records subject to the affirmative disclosure requirements, created or obtained since November 1, 1996, available to the public by electronic means, 5 U.S.C. § 552(a)(2), i.e., online, *see* https://www.justice.gov/oip/oip-guidance/proactive_disclosure_of_non-exempt_information. The purpose of these amendments was to make it easier for the public to obtain agency records without having to submit individual FOIA requests, and to reduce the federal agencies' backlog of pending FOIA requests.

31.     For many years the USDA complied with this requirement by making such records routinely available in APHIS's Electronic Reading Room on its website, subject to redactions for information that is exempt from disclosure under FOIA.

32.     In 2016, with enactment of the FOIA Improvement Act of 2016, Congress further amended FOIA to make clear that the affirmative disclosure requirements apply to records that have been disclosed under the Act to any person and "that have been requested 3 or more times." 5 U.S.C. § 552(a)(2)(D)(ii)(II).  Section 3 of the FOIA Improvement Act of 2016 also provided that "[n]ot later than 180 days after the date of enactment of this Act, the head of each agency . . . shall issue regulations on procedures for the disclosure" of such records. Section 3, FOIA Improvement Act of 2016, Pub. Law 114-185 (June 30, 2016).

33.     With respect to all other agency records, FOIA provides that an individual or organization may request access to such information by submitting a request to the agency, and that the agency must provide access to such requested information unless it is exempt from disclosure under one of the nine exemptions to the Act. 5 U.S.C. § 552(a)(3)(A), (b). The Act further requires that the agency must release all segregable non-exempt portions of any requested record. *Id.* § 552(b).

34.     It is well established as a matter of law that once an agency has publicly disclosed information it may not withhold the same information from the public under a claim of exemption—i.e., the agency waives its ability to do so.

35.     Although FOIA requires agencies to respond to a FOIA request made under 5 U.S.C. § 552(a)(3)(A) within specific statutory deadlines, *id.* § 552(a)(6), APHIS rarely, if ever, meets those deadlines.

36.     The USDA consistently has a substantial backlog of FOIA requests and, except in unusual circumstances, processes such requests on a "first-in/first-out" basis. As a consequence, individuals seeking access to information through requests made under 5 U.S.C. § 552(a)(3)(A) typically must wait for many months, and often years, to obtain a final substantive response to such requests from the USDA. For example, last year Plaintiff PETA received a response to a FOIA request that had been pending for over four and a half years, in which the agency stated that it had no requests responsive to PETA's request. PETA is still awaiting responses to other requests that have been pending for well over four years.

37.     Since the records at issue in this lawsuit were removed from APHIS's website, the backlog and delays have increased dramatically. According to the USDA's most recent annual report to Congress, at the end of fiscal year 2017, APHIS had 1620 FOIA requests pending—

14

two-and-a-half times the 652 open requests it had started the fiscal year with.

https://www.dm.usda.gov/foia/docs/USDA+FY17+(Final).docx at 8. APHIS takes as long as

1191 days—i.e., well over three years—to process what it acknowledges is a "simple" FOIA

request, and up to 149 days—five months—to process a request that is required to be

"expedited." *Id.* at 23.

38.     In fact, Plaintiff Winders has an expedited FOIA request that has been pending

with APHIS for 628 days. FOIA Request No. 2017-APHIS-2080.

39.     FOIA also provides that if a court finds that an agency acted arbitrary or

capriciously in withholding records under FOIA, the U.S. Office of Special Counsel shall

"initiate a proceeding to determine whether disciplinary action is warranted against the office or

employee who was principally responsible for the withholding." 5 U.S.C § 552(a)(4)(F).

**C.     APHIS's Decision to Remove Information from Its Website, and Plaintiffs'
Previous Lawsuit Challenging That Decision.**

40.     Before February 3, 2017, the USDA routinely affirmatively disclosed in its

Electronic Reading Room much of the information at issue in this case, including, but not limited

to inspection reports that identified the names, locations, and license numbers of regulated

entities and included the inventories of animals maintained at such facilities, which are part of

each such inspection report; information in annual reports of research facilities concerning

explanations for departures from AWA minimum requirements and explanations for subjecting

regulated animals to unrelieved pain and distress (referred to as "Column E" explanations); and

various categories of enforcement records, including (1) official warning letters, (2) voluntary

settlements agreements between APHIS and regulated entities (either pre-litigation settlements or

stipulations), (3) administrative complaints initiating formal administrative proceedings before

the USDA's Office of Administrative Law Judge ("OALJ"), (4) consent decisions entered into by the OALJ, and (5) final OALJ decisions.

41.     When members of the public filed FOIA requests for such information that was available in the Electronic Reading Room, the USDA and APHIS often responded by referring the requester to the Reading Room instead of issuing copies of the records to the requesters.

42.     On February 3, 2017, APHIS announced that as of that date, with respect to records involving the AWA, it was "remov[ing] from its website inspection reports, regulatory correspondence, research facility reports, and enforcement records that have not received final adjudication." Stakeholder Announcement: Updates to APHIS' Website Involving Animal Welfare Act and Horse Protection Act Compliance Information, https://content.govdelivery.com/accounts/USDAAPHIS/bulletins/184e0d0. The "regulatory correspondence" and "enforcement records" removed from the website included final dispositions, including warnings, settlements, and stipulations.

43.     As a result, records that for many years were easily accessible to Plaintiffs, their members, and the public via APHIS's routine posting of such records in its Electronic Reading Room were removed from that site.

44.     On February 13, 2017, Plaintiffs filed a lawsuit challenging the USDA's removal of records from its Electronic Reading Room. *People for the Ethical Treatment of Animals, et al. v. USDA, et al.*, Civ. No. 17-00269 (D.D.C.).

45.     After February 13, 2017, the USDA began "re-posting" some—but not all—of the information it had removed from its Electronic Reading Room, albeit for the most part in different formats than such information had previously been posted, and with some of the

information that had previously been routinely posted by the agency now omitted from the records.

46. In August 2017, the USDA announced that, with one exception, it had finished its review of the information it used to affirmatively post on its website, and had made final decisions about what materials it would continue to post in its Electronic Reading Room. The one exception was the animal inventories that accompany USDA inspection reports. As to those records, the agency informed the public that it "intend[ed] to make this information available in the future." https://www.aphis.usda.gov/aphis/ourfocus/animalwelfare/sa_awa/awa-inspection-and-annual-reports.

47. The USDA has redacted from the records it used to routinely post in its Electronic Reading Room information that would allow the public to identify by name, address, or license number of the majority of regulated entities. Prior to February 3, 2017, such information had previously not been redacted by the agency in its Electronic Reading Room.

48. The agency asserts that this same information that the agency had already publicly disclosed is now exempt from disclosure "to protect privacy interests."

49. The USDA has not re-posted the animal inventories that are part of each inspection report, and it is now withholding from the public animal inventories that it had previously posted in its Electronic Reading Room prior to February 3, 2017.

50. Although the USDA has reposted all previously posted research facility annual reports for fiscal years 1999 through 2015, with respect to some of those annual reports, the USDA has not disclosed all of the "Column E explanations"—i.e. information required from regulated facilities explaining why certain animals used in procedures involving pain and distress were not provided medication or other treatments to minimize their suffering—or the

explanations for exceptions to compliance with the standards and regulations, *see* 7 U.S.C. § 2143(a)(7)(B); 9 C.F.R. § 2.36(b)(3), (7). Likewise, although the USDA has posted research facility annual reports for fiscal years 2016 and 2017, most—if not all—of these reports have been posted without the requisite explanation pages.

51.     APHIS is also continuing to withhold from the public the vast majority of enforcement records that it previously routinely disclosed to the public in its Electronic Reading Room, including official warning letters; voluntary settlement agreements between APHIS and regulated entities; and administrative complaints initiating formal administrative proceedings before the USDA's OALJ.

52.     Many of the enforcement records that the USDA has failed to re-post were already previously publicly available in the USDA's Electronic Reading Room.

53.     On January 18, 2018, Judge Cooper of this Court issued a memorandum opinion dismissing Plaintiffs' earlier case on the ground that, because the USDA had made final decisions about what it would be re-posting in its Electronic Reading Room, Plaintiffs' request for declaratory and injunctive relief with respect to their claim that such information must be affirmatively disclosed had become moot. However, with respect to such information, Judge Cooper specifically noted that Plaintiffs "may raise challenges to the redactions that now accompany these records." Slip Op. at 7, n.3.

54.     As to two categories of information that the agency had not reposted—i.e., certain enforcement records and the animal inventories that accompany all USDA inspection reports— Judge Cooper held that Plaintiffs had not adequately alleged that such records are subject to FOIA's affirmative disclosure requirement. Hence, as to those records, he dismissed Plaintiffs' claims without prejudice. *Id.* at 12.

55.     Inspection reports, including animal inventories that are part of such reports, have been routinely released under FOIA by the USDA and are frequently requested records and have been requested three or more times. Many of these records, and much of the information therein, are not exempt from disclosure, and hence, must be affirmatively disclosed to the public.

56.     The USDA has previously concluded that inspection reports, which include animal inventories, are frequently requested records that must be affirmatively disclosed under FOIA.

57.     In April 2003, Chester Gipson, then Deputy Administrator of Animal Care for APHIS, informed APHIS's Assistant General Counsel that AC [Animal Care] and FOI determined that AC inspection reports and annual reports qualified as 'reading room' records because of the high interest from animal interest groups as well as the general public." Memorandum from Chester Gipson to Kenneth Cohen (Apr. 18, 2003). In response to that memorandum, on March 12, 2004, the Assistant General Counsel stated that he "conclude[d] that the AC reports qualify as records subject to multiple requests under E-FOIA and must be made available to the public via electronic means unless there is an applicable exemption from disclosure under FOIA." Memorandum from Kenneth Cohen to Chester Gipson (Mar. 12, 2004).

58.     In 2009 APHIS's then Associate Administrator, who is now its Administrator, informed USDA personnel that inspection reports were the most frequently requested APHIS records under FOIA. Letter from Kevin Shea to Agency Personnel (June 19, 2009).

59.     In a 2009 Power Point Presentation, APHIS Official Kathleen Garland explained to agency personnel that "Inspection Reports" were posted online as "Required by E-FOIA Amendments to Freedom of Information Act." USDA APHIS Animal Care Update (2009).

60. Annual Reports for research facilities, which include Column E explanations and exception explanations, have been routinely released by the USDA under FOIA and are frequently requested records and have been requested three or more times. These records, and most of the information therein, including the explanation pages, are not exempt from disclosure, and hence, must be affirmatively disclosed to the public.

61. The USDA has previously concluded that annual reports are frequently requested records that must be posted in its Electronic Reading Room pursuant to FOIA's affirmative disclosure requirements.

62. In April 2003, Chester Gipson of APHIS stated that annual reports qualified as "reading room" records "because of the high interest from animal interest groups as well as the general public," Memorandum from Chester Gipson to Kenneth Cohen (Apr. 18, 2003), and APHIS's Assistant General Counsel agreed with this conclusion, stating that annual reports "qualify as records subject to multiple requests under E-FOIA and must be made available to the pubic via electronic means," Memorandum from Kenneth E. Cohen, Assistant General Counsel, General Law Division, Office of General Counsel, USDA, to Chester A. Gipson, Deputy Administrator, Animal Care, APHIS, & Michael S. Marquis, Assistant Director for Freedom of Information, Legislative and Public Affairs, APHIS (Mar. 12, 2004).

63. USDA official warning letters, voluntary settlement agreements between APHIS and regulated entities, stipulations, and decisions and orders, constitute "final opinions" and "orders" that are required to be affirmatively disclosed pursuant to FOIA's affirmative disclosure requirements, 5 U.S.C. § 552(a)(2)(A). "Order" is broadly defined by the Administrative Procedure Act as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including

licensing," and "adjudication" is defined as "agency process for the formulation of an order." *Id.* § 551(6), (7). Decisions by the USDA, as well as settlements, stipulations, and official warnings all close out cases and thus are "final dispositions" within the meaning of 5 U.S.C. § 551(6). These records, and most of the information therein, are not exempt from disclosure, and hence, must be affirmatively disclosed to the public.

64.     These same categories of information—i.e., USDA official warning letters, voluntary settlement agreements between APHIS and regulated entities, stipulations, and decisions and orders—also constitute records that "have been released" under FOIA and that either the USDA has determined "have become or are likely to become the subject of subsequent requests for substantially the same records" or "have been requested 3 or more times" under FOIA. Therefore, these records must also be affirmatively disclosed pursuant to 5 U.S.C. § 552(a)(2)(D)(ii)(II). Many of these records, and much of the information therein, are not exempt from disclosure, and hence, must be affirmatively disclosed to the public.

65.     In June 2015, APHIS's FOIA Director informed a reporter that "enforcement records," including warning letters, complaints, decisions and orders, and stipulations, are "frequently requested" records and accordingly must be affirmatively disclosed to the public via the agency's Electronic Reading room, "in compliance with the Electronic Freedom of Information Act Amendments of 1996." Letter to James Shiffer, Star Tribune, from Tonya Woods, Director, USDA FOIA Office (Jan. 23, 2015).

66.     As a consequence of USDA not affirmatively disclosing the information at issue in this case, Plaintiffs and their members can only obtain such records by submitting individual FOIA requests to the USDA pursuant to 5 U.S.C. § 552(a)(3)(A), and enduring months and even

years of delay before they may obtain such records, which severely impedes their ability to engage in research, advocacy, and information dissemination.

67. In fact, more than twenty months ago Plaintiffs requested the information at issue in this case pursuant to 5 U.S.C. § 552(a)(3), and the USDA still has not provided it to Plaintiffs.

68. Requiring Plaintiffs, their members, and others to submit individual FOIA requests for access to the information that until February 3, 2017, APHIS routinely posted in its Electronic Reading Room, has significantly increased the number of FOIA requests the agency must process and, accordingly, increased the agency's FOIA backlog and the agency's delay in responding to FOIA requests. Such delay and backlogs are precisely what the 1996 Amendments to FOIA were intended to reduce.

69. According to APHIS's own FOIA logs, between February 3, 2017 when the agency removed records from its Electronic Reading Room and May 15, 2017, APHIS received 751 FOIA requests. This is more than double the number of FOIA requests that APHIS received for the same time period in 2016.

70. Of the 751 FOIA requests received by APHIS between February 3, 2017, and May 17, 2017, 527, or more than 70%, were at least in part for records that would have been readily available in the APHIS Electronic Reading Room prior to February 3, 2017. These include 68 requests for inspection reports; 54 requests for enforcement records; and 32 requests for annual reports.

71. The USDA has not promulgated regulations instructing the public as to how to request the agency to affirmatively disclose records required to be so disclosed pursuant to the 1996 and 2016 Amendments to FOIA.

72.     By letter dated February 2, 2018, Plaintiff Winders on behalf of herself and the other Plaintiffs in this action requested, pursuant to the affirmative disclosure requirements of FOIA, 5 U.S.C. §552(a)(2), that APHIS provide to Plaintiffs and post on its website (1) warning letters, stipulations, pre-litigation settlement agreements, and administrative complaints; (2) an index of all records made available online pursuant to 5 U.S.C.§552(a)(2)(D); and (3) full AWA inspection reports, including animal inventories and information identifying the subject regulated entity.

73.     By letter dated March 5, 2018, the USDA responded to Plaintiffs' request by stating that the request was "not a proper request under FOIA," explaining that the agency takes the position that there is no way for a member of the public to request that the agency affirmatively disclosed information pursuant to 5 U.S.C. §552(a)(2).

74.     Plaintiffs sent the USDA a timely appeal of the agency's denial of their request under 5 U.S.C. §552(a)(2).

75.     By letter dated April 5, 2018, the USDA denied Plaintiffs' appeal, insisting that Plaintiffs may not request the agency to disclose records pursuant to the affirmative disclosure requirements of FOIA, 5 U.S.C. §552(a)(2).

76.     Since February 3, 2017, the USDA has engaged in a pattern, practice, and policy of not affirmatively disclosing all of the materials it is required to so disclose in its Electronic Reading Room pursuant to the affirmative disclosure requirements of FOIA, 5 U.S.C. §552(a)(2).

**D.     Plaintiffs' Request for Disclosure of Full Animal Welfare Act Research Facility Annual Reports, Including Explanation Pages**

77.     On April 16, 2018, Plaintiffs filed their Complaint in this case.

23

78.     On June 22, 2018, Defendants filed a Motion to Dismiss Plaintiffs' Complaint. Defendants argued that Plaintiffs could not pursue a claim regarding research facility annual reports, including the "Column E" explanations attached to such reports, because Plaintiffs' February 2, 2018, request (described in ¶ 72 above) did not explicitly request disclosure of research facility annual reports, including the explanation pages, and that therefore Plaintiffs had purportedly failed to exhaust applicable administrative remedies with regard to these records.

79.     Although Plaintiffs maintain that no exhaustion of administrative remedies is necessary before filing suit to challenge an agency's violations of FOIA's affirmative disclosure mandate, in an effort to narrow the range of issues presented to the Court, Plaintiffs obtained Defendants' consent to stay the briefing on Defendants' Motion to Dismiss so that Plaintiffs could file the FOIA request that Defendants insisted was necessary.

80.     On July 3, 2018, Plaintiffs filed a Consent Motion to hold in abeyance briefing on Defendants' Motion to Dismiss while Plaintiffs submitted a request for disclosure of the AWA research facility annual reports, including explanation pages, referred to in Plaintiffs' Complaint. The Court granted this motion on July 11, 2018.

81.     On July 16, 2018, Plaintiffs filed a request with USDA and APHIS under 5 U.S.C. § 552(a)(2) requesting that the agencies "affirmatively disclose full research facility annual reports . . . including the explanation pages of those reports, for fiscal years 2015–2017."

82.     Plaintiffs' request explained that these annual reports clearly qualify as frequently requested records, and pointed to the fact that high-level officials at APHIS had stated that these records "qualify as records subject to multiple requests under E-FOIA and must be made available to the public via electronic means." Plaintiffs' request also explained that APHIS's FOIA logs demonstrate that the agency had received *dozens* of requests for such records.

Plaintiffs' request also explained that high-level APHIS officials have stated that the agency responded to requests for these records by "generally referr[ing] requesters to the website, rather than processing and releasing records already available on the agency website."

83.    Plaintiffs' request also noted that despite the fact that APHIS itself has previously recognized that such records must be proactively disclosed to the public pursuant to FOIA's affirmative disclosure mandate, the agency is apparently withholding virtually all explanation pages for annual reports from 2015 to 2017.

84.    Accordingly, Plaintiffs requested that APHIS come into compliance with its affirmative disclosure duties by immediately disclosing all annual report explanation pages.

85.    On August 13, 2018, APHIS denied Plaintiffs' request for disclosure of complete annual reports for 2015 to 2017, including explanation pages.  Despite the fact that the agency insisted that Plaintiffs file this request, with regard to Plaintiffs' request that the agency post these records online—as FOIA's affirmative disclosure mandate requires—APHIS asserted that "the USDA FOIA regulations, and FOIA itself, do not require the agency to comply with requests to publish records online," but instead only allow members of the public to "request their own copy of these records or an opportunity to inspect them."

86.    APHIS also asserted that the annual reports and their explanation pages do not qualify as records subject to mandatory disclosure under section (a)(2)(D) of FOIA because the agency asserted that they have not been previously released pursuant to a FOIA request under 5 U.S.C. § 552(a)(3).  APHIS asserted that its posting of annual reports and explanation pages online was done "proactively and independently from any FOIA request," and thus argued that these postings did not constitute a "release" of records.  APHIS did note, however, that it had

posted annual reports, and explanation pages, previously pursuant to a settlement agreement in a similar prior case, *Humane Society of the U.S. v. USDA*, Civil Action No. 05-0197 (D.D.C.).

87.     APHIS stated that it plans to post annual reports in the future, along with explanation pages, but asserted that such posting is entirely "discretionary" and that "APHIS does not currently have a time frame" for when it would post these records.

88.     On August 24, 2018, although Plaintiffs did not think it was necessary to do so, counsel for Plaintiffs submitted an administrative appeal of APHIS's denial of Plaintiffs' July 16 request.

89.     On September 25, 2018, APHIS denied Plaintiffs' administrative appeal.

90.     In its appeal denial, APHIS refused to consider the factors enumerated in the USDA's own regulations for determining whether records must be affirmatively disclosed under FOIA, as set forth in paragraph 29 above.

91.     APHIS acknowledged that Plaintiffs "may seek judicial review of [the agency's] final response in the appropriate U.S. District Court."

92.     As of the filing of this Amended Complaint, APHIS has not posted the explanation pages described in Plaintiffs' FOIA request.

## PLAINTIFFS' CLAIM FOR RELIEF

## CLAIM I - UNDER FOIA

93.     Defendants' failure to affirmatively disclose in its Electronic Reading Room non-exempt information from inspection reports—including, but not limited to the names, addresses, and license numbers of regulated entities, and the animal inventories that are included in such reports—violates the affirmative disclosure requirements of FOIA, 5 U.S.C. § 552(a)(2), which require that such information be disclosed through electronic means to the public, including

Plaintiffs and their members, without requiring them to submit individual FOIA requests under 5 U.S.C. § 552(a)(3). Moreover, because none of this information is exempt from disclosure under any of the nine Exemptions to FOIA, the agency is also violating the affirmative disclosure requirements of the statute.

94.    Defendants' failure to affirmatively disclose in its Electronic Reading Room non-exempt information from annual reports—including, but not limited to the Column E and other explanations—violates the affirmative disclosure requirements of FOIA, 5 U.S.C. § 552(a)(2), which require that such information be disclosed through electronic means to the public, including Plaintiffs and their members, without requiring them to submit individual FOIA requests under 5 U.S.C. § 552(a)(3). Moreover, because none of this information is exempt from disclosure under any of the nine Exemptions to FOIA, the agency is also violating the affirmative disclosure requirements of the statute.

95.    Defendants' failure to affirmatively disclose in its Electronic Reading Room non-exempt information from enforcement records—including official warnings, stipulations, pre-litigation settlement agreements, and administrative complaints—violates the affirmative disclosure requirements of FOIA, 5 U.S.C. § 552(a)(2), which require that such information be disclosed through electronic means to the public, including Plaintiffs and their members, without requiring them to submit individual FOIA requests under 5 U.S.C. § 552(a)(3). Moreover, because none of this information is exempt from disclosure under any of the nine Exemptions to FOIA, the agency is also violating the affirmative disclosure requirements of the statute.

96.    Defendants' actions injure Plaintiffs as described in paragraphs 8-17 above.

## CLAIM II – UNDER FOIA AND THE APA

97.     Defendants' failure to promulgate regulations implementing the requirements of Section 2 of the FOIA Improvement Act of 2016, including the process by which it will comply with its obligation to affirmatively disclose in its Electronic Reading Room records that have been released to any person and because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records, or that have been requested three or more times, 5 U.S.C. § 552(a)(2)(D)(ii)(II), violates the 2016 Amendments to FOIA and constitutes agency action unlawfully withheld and unreasonably delayed, within the meaning of the APA, 5 U.S.C. § 706(1).

98.     Defendants' position that there is no way a member of the public may request the agency to affirmatively disclose records pursuant to the affirmative disclosure requirements of FOIA, 5 U.S.C. §552(a)(2), violates FOIA and is arbitrary and capricious and an abuse of discretion within the meaning of the APA, 5 U.S.C. § 706(2).

99.     Defendants' actions injure Plaintiffs as described in paragraphs 8-170 above.

## CLAIM III – UNDER FOIA AND THE APA

100.    Defendants' actions in engaging in a pattern and practice and policy of not affirmatively disclosing to the public all of the information that is required to be so disclosed by the 1996 and 2016 Amendments to FOIA violate FOIA and are therefore arbitrary and capricious, an abuse of discretion, and not in accordance with law within the meaning of the APA, 5 U.S.C. § 706(2).

101.    Defendants' actions in engaging in this unlawful pattern, practice, and policy injure Plaintiffs as described in paragraphs 8-17 above.

**WHEREFORE**, Plaintiffs pray that this Court:

(1)     Declare that Defendants have violated FOIA by failing to affirmatively disclose all (a) non-exempt portions of inspection reports, including information identifying the regulated entity and the animal inventories that are part of those reports; (b) non-exempt portions of annual reports, including Column E and other explanations; and (c) non-exempt enforcement records and non-exempt portions of enforcement records, including official warnings, stipulations, pre-litigation settlement agreements, and administrative complaints;

(2)     Declare that Defendants have violated the 2016 Amendments to FOIA and the APA by failing to promulgate regulations implementing the mandatory obligations imposed by Section 2 of those Amendments;

(3)     Declare that Defendants have violated the affirmative disclosure requirements of FOIA and acted arbitrarily and capriciously under the APA by refusing to process Plaintiffs' February 2, 2018, request that the agency affirmatively disclose information to the public pursuant to 5 U.S.C. §552(a)(2);

(4)     Declare the Defendants have violated FOIA and acted arbitrarily and capriciously under the APA by engaging in a pattern, practice, and policy of not affirmatively disclosing all of the information the USDA is required to affirmatively disclose under FOIA;

(5)     Order Defendants to immediately make all such records and information that the agency is required to affirmatively disclose available to Plaintiffs directly, as well as to Plaintiffs, their members, and the public, via APHIS's Electronic Reading Room;

(6)     Order Defendants to make all such non-exempt records and information available to Plaintiffs directly, as well as to Plaintiffs, their members, and the public in the future in its Electronic Reading Room, as soon as possible after such records and information are generated

29

or obtained by Defendants and without requiring Plaintiffs or their members to submit individual FOIA requests for such records and information;

(7)    Order Defendants to promulgate final regulations implementing Section 2 of the FOIA Improvement Act of 2016;

(8)    Order Defendants to process Plaintiffs' February 2, 2018, request that it affirmatively disclose records on its website pursuant to 5 U.S.C. §552(a)(2);

(9)    Order Defendants to process Plaintiffs' July 16, 2018, request that it affirmatively disclose records on its website pursuant to 5 U.S.C. §552(a)(2);

(10) Award Plaintiffs their costs and reasonable attorneys' fees in this action; and

(11)    Grant such other further relief as the Court may deem just and proper.

Respectfully submitted,


_____/s/_____
Katherine A. Meyer
D.C. Bar No. 244301
kmeyer@meyerglitz.com


_____/s/_____
William Nicholson Lawton
D.C. Bar No. 1046604
nlawton@meyerglitz.com

Meyer Glitzenstein & Eubanks, LLP
4115 Wisconsin Ave., N.W. Suite 210
Washington, D.C.  20016
(202) 588-5206 (O)
(202) 588-5049 (fax)


Date:   October 24, 2018