**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.**, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 18-cv-00887 (CRC) |
| **UNITED STATES DEPARTMENT OF AGRICULTURE**, *et al.*, | |
| Defendants. | |

**OPINION AND ORDER**

Various plaintiffs, including People for the Ethical Treatment of Animals, filed this

Freedom of Information Act ("FOIA") lawsuit challenging the removal of certain records from

the website of the Department of Agriculture's Animal and Plant Health Inspection Service

("APHIS").  See Supp. Compl. ¶1.  But this suit, which the Court will call PETA II, doesn't

write on a blank slate.  It follows an earlier case, PETA v. U.S. Dep't of Agriculture ("PETA I"),

No. 17-cv-0269-CRC (D.D.C.), that is currently pending before the D.C. Circuit Court of

Appeals.  The government contends that, because PETA I and PETA II involve common issues

of law and fact, the Court should stay proceedings in the latter pending the D.C. Circuit's

decision in the former.  The Court agrees and will stay the case.

**I.   Background**

In PETA I, Plaintiffs sought an order requiring APHIS to repost on its website animal

research facility inspection reports and other records that the agency had previously removed.

Plaintiffs alleged that the removal of these documents violated FOIA's electronic "reading room"

provision, which requires federal agencies to "make available for public inspection in an

electronic format" records that have been released to any person under the Act and that "the

1

agency determines have become or are likely to become the subject of subsequent requests for substantially the same records[.]"  5 U.S.C. § 552(a)(2).

This Court dismissed the case.  Some of Plaintiffs' claims were dismissed as moot because APHIS had reposted the materials after the suit was filed; others were dismissed without prejudice because Plaintiffs had not sufficiently alleged that the records fell under FOIA's affirmative disclosure requirement.  See PETA I, 285 F. Supp. 3d 307, 312–15 (D.D.C. 2018).  Plaintiffs appealed the claims dismissed as moot to the D.C. Circuit, see PETA v. U.S. Dep't of Agric., No. 18-5074 (D.C. Cir.), but brought a new suit containing, among other claims, those dismissed in PETA I without prejudice.  See Supp. Compl. ¶¶ 1, 53–54.

Defendants have moved to stay proceedings in this case pending the D.C. Circuit's decision in PETA I, which Plaintiffs oppose.  The issue is now ripe for the court's resolution.

## II.    Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control . . . its docket with economy of time and effort[.]"  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  "[T]he decision to grant a stay . . . is 'generally left to the sound discretion of district courts.'"  Ryan v. Gonzales, 568 U.S. 57, 74 (2013) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  In exercising that discretion, courts consider the balance between "hardship to the parties and benefits to judicial economy[.]"  Nat'l Indus. for the Blind v. Dep't of Veterans Affairs, 296 F. Supp. 3d 131, 137 (D.D.C. 2017); see Hulley Enters. v. Russian Fed'n, 211 F. Supp. 3d 269, 280 (D.D.C. 2016) (stating that courts should consider "the benefits of a stay, the hardship to the movant of denying a stay, and any injury to the nonmovant from issuing a stay").

### III.   Analysis

Striking that balance here, the Court concludes that a stay is warranted because it would

serve judicial economy without causing significant hardship to either party.

### A.   Judicial Economy

Courts consider whether a stay would promote "economy of time and effort for itself, for

counsel, and for litigants." Landis, 299 U.S. at 254.  "[W]here a separate proceeding bearing

upon the case is pending," judicial economy considerations tend to favor a stay. Hulley, 211 F.

Supp. 3d at 276 (citing Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 879 n.6 (1998)).  One case

bears on another "where the resolution of other litigation will likely 'narrow the issues in the

pending case[] and assist in the determination of the questions of law involved.'" Id. (quoting

Landis, 299 U.S. at 253); see IBT/HERE Employee Representatives' Council v. Gate Gourmet

Div. Am., 402 F. Supp. 2d 289, 292 (D.D.C. 2005) (finding benefits to economy where another

case's proceedings "may affect the scope and necessity of litigation").

Though the separate proceeding must bear upon the pending case, it is not necessary "that

the issues in such proceedings are necessarily controlling of the action before the court." Hulley,

211 F. Supp. 3d at 276 (quoting Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857,

863–64 (9th Cir. 1979)); see also Landis, 299 U.S. at 254 ("[W]e find ourselves unable to assent

to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in

another, the parties to the two causes must be shown to be the same and the issues identical.");

and Bridgeport Hosp. v. Sebelius, 2011 WL 862250, at *1 (D.D.C. Mar. 10, 2011) ("[A] stay of

the proceedings in one case is justifiable even where the parallel proceedings 'may not settle

every question of fact and law,' but would settle some outstanding issues and simplify others."

(quoting Landis, 299 U.S. at 256)).  That explains why a stay may be warranted even where the

separate proceedings are of an entirely different character—judicial, arbitral, or administrative. See Hulley, 211 F. Supp. 3d at 276.

The government contends that PETA I and PETA II involve "common claims and legal issues," and that proceeding in this case while PETA I is before the D.C. Circuit would create "wasteful and duplicative litigation." Defs' Reply at 1, 4. Plaintiffs insist that the cases are entirely unrelated because the appeal in PETA I only addresses the issue of mootness, while the complaint in PETA II is a combination of the claims dismissed without prejudice in PETA I and a handful of new FOIA and APA claims. See Pls' Opp. at 4.

But, as explained above, it is not necessary that two cases overlap entirely—or even significantly—for a stay to be proper. See Hulley, 211 F. Supp. 3d at 276. Instead, a stay may be appropriate "where a separate proceeding *bearing upon* the case is pending." Id. ("[A] stay may be warranted where the resolution of other litigation will likely 'narrow the issues in the pending case[] and assist in the determination of the questions of law involved.'" (quoting Landis, 299 U.S. at 253)). Here, the overlap between PETA I and PETA II is more than enough to clear this low bar.

Although not all of the issues and claims in the two cases are identical, the underlying facts and law are so related that the Court's disposition in this case could well be affected by the D.C. Circuit's resolution of the issues in PETA I. For example, the complaints in both cases address the USDA's alleged non-compliance with FOIA's reading room provision. Compare Supp. Compl. ¶ 43 ("As a result [of USDA's non-compliance], records that for many years were easily accessible . . . via APHIS's routine posting of such records in its Electronic Reading Room were removed from that site."); with PETA I Compl. ¶ 31 ("Accordingly, records that for many years were easily accessible . . . via APHIS's routine posting of such records on its website are

now no longer readily available.").  Plaintiffs also raise arguments in <u>PETA II</u> regarding the requirements for mandatory disclosure that the D.C. Circuit may consider in deciding the appeal in <u>PETA I</u>.  <u>Compare</u> Supp. Compl. ¶¶ 27–32, 55–56 (arguing that once material is made available it must remain so under FOIA's affirmative disclosure provision); <u>with</u> Pls' Opening Brief ("Op. Brf.") at 10–15 (same).  PETA disputes this point, arguing that the D.C. Circuit will not reach any merits issues and will constrain its analysis to mootness—thereby reducing the overlap between the two cases—but there is no rule forbidding the panel in that case from deciding the case on *any* ground, mootness or merits.  <u>See, e.g.</u>, <u>Wilburn v. Robinson</u>, 480 F.3d 1140, 1148 (D.C. Cir. 2007) (noting that, in the context of summary judgment, a reviewing court may rest its decision "on any ground that finds support in the record").  And indeed, at oral argument before the D.C. Circuit, the panel probed extensively the merits questions presented in this case.  <u>See, e.g.</u>, Audio Recording of Oral Argument, Jan. 25, 2019, at 7:00 (roughly), <u>PETA v. U.S. Dep't of Agric.</u>, No. 18-5074 (D.C. Cir.) ("Where in the complaint do you allege that any of these documents have been released pursuant to a FOIA request under [5 U.S.C. § 552(a)(3)]?") (question by Katsas, J.).

The overlap does not end there.  In <u>PETA II</u>, Plaintiffs seek access to material that was redacted from the inspection reports at issue in <u>PETA I</u>.  <u>See</u> Supp. Compl. ¶¶ 44–48, 53, 93 (praying for access to inspection reports re-posted to the website).  This same material is one of the objects of Plaintiffs' appeal in <u>PETA I</u>: The Plaintiffs maintain that this Court erred in finding that their challenge to the redactions was not included in the complaint.  <u>See</u> Op. Brf. at 26, 39–42 (insisting that this Court "had no valid basis for dismissing" Plaintiffs' claims regarding the same inspection reports).  In light of the foregoing, it is certainly possible—and

perhaps likely—that the D.C. Circuit's ruling in PETA I could affect the Court's disposition in this case.

Courts in this district routinely grant stays in similar situations.  In Hulley, for example, the court found a stay would promote judicial economy where the reasoning of the Court of Appeal of The Hague ("Hague") in a case involving the same parties could "be persuasive as to certain issues relevant" to the district court's disposition of the case.  211 F. Supp. 3d at 281 (internal quotation marks omitted).  Hulley involved a dispute over an arbitration agreement between an oil company and the Russian government.  The parties had one dispute before the Hague and one before a court in this District.  Even though the Hague's determination would not have been binding on the court as to every issue, the district court still deemed it prudent to await the Dutch court's decision before proceeding with the case.  The rationale behind Hulley applies with greater force where the other court is not an international tribunal but the appellate court that reviews this Court's decisions.  Cf. Nat'l Family Planning & Reproductive Health Ass'n v. Sullivan, 1992 WL 345629 at *3 ("Given the Court of Appeals' broad jurisdiction over the subject matter of the case at bar, this Court has no wish to unduly interfere with the appellate court's freedom to decide the matter on review.").

And in Allina Health Services v. Sebelius, a court in this district stayed proceedings pending resolution of a different case before the D.C. Circuit because that court's decision would be dispositive of the claims.  756 F. Supp. 2d 61, 71 (D.D.C. 2010).  Granted, the D.C. Circuit's decision in PETA I will not likely be dispositive of all the claims here, but the similarities between the two cases make it very possible that the panel's decision will be dispositive of at least some of them.  See National Family Planning, 1992 WL 345629 at *4 (holding matter in abeyance pending the D.C. Circuit's decision in "a case involving the same subject matter as the

case pending" before the district court).  Even if this is not quite the "paradigm example of a case warranting a stay where the legal viability of claims may rest on determinations in another legal proceeding," <u>Hulley</u>, 211 F. Supp. 2d at 282, it is still a good example of one.

Staying proceedings in this situation could potentially save the parties from having to argue, and this Court from having to resolve, the same or substantially related issues multiple times.  It also saves this Court the potential discomfort of issuing an order that may quickly be overturned—at least partially—by the D.C. Circuit's resolution of the claims in <u>PETA I</u>.  Thus, the benefits to judicial economy counsel in favor of a stay.

B.  <u>Hardship</u>

Even where the benefits to judicial economy are obvious, courts must balance those benefits against "the hardship to the movant of denying a stay, and any injury to the nonmovant from issuing a stay." <u>Hulley</u>, 211 F. Supp. 3d at 276.  "The proponent of a stay bears the burden of establishing its need," <u>Clinton v. Jones</u>, 520 U.S. 681, 708 (1997), and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [it] prays will work damage to some one else," <u>Landis</u>, 299 U.S. at 255.  Here, however, there is not "a fair possibility" that a stay will cause Plaintiffs any real harm, so the Court does not place on the government the burden of establishing "a clear case of hardship." Instead, the Court considers the possible hardship to each party—to the government if the stay is denied, and to Plaintiffs if the stay is granted.  <u>See</u> <u>Hulley</u>, 211 F. Supp. 3d at 276.

Plaintiffs claim that a stay here would add to the long wait they have already experienced in these matters and further aggravate the harms to their education and advocacy efforts.  <u>See</u> Pls' Opp. at 10.  The government, meanwhile, contends that proceeding in both cases

simultaneously would place unnecessary burdens on them.  <u>See</u> Defs' Mot. to Stay at 5.  Neither party has demonstrated sufficient hardship to significantly alter the stay calculus.

The oral argument before the Circuit in <u>PETA I</u> has already taken place, so a resolution of that case can be expected in a matter of a few months at the latest.  And this case remains in its early stages, meaning a stay will not delay what was otherwise an imminent decision from this Court.  Accordingly, the modest hardship Plaintiffs might endure as a consequence of a stay does not counterbalance the potential benefits to judicial economy.

### IV.   Conclusion

The similarity between the underlying facts and law in <u>PETA I</u> and <u>PETA II</u>, together with the absence of any significant prejudice to either party, persuade this Court that the benefits to judicial economy outweigh any hardship to the parties.  Therefore, it is hereby

**ORDERED** that Defendants' Motion to Stay (ECF No. 19) is GRANTED, pending resolution of <u>PETA I</u> before the D.C. Circuit.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>February 5, 2019</u>